We'll hear argument next in Case 14-510, Menominee Indian Tribe of Wisconsin v. United States. Mr. Stromer. Mr. Chief Justice, and may it please the Court. The facts in this case are very complex, but the legal question that is presented to you today is relatively straightforward to state. And the legal question is whether or not an individual or an entity that reasonably relies on class-action tolling can, if tolling is found to be ineffective at a later date, then rely on the same facts to argue that equitable tolling under Holland should apply. In the Irwin case, this Court specifically cross-referenced American Pipe as an example of a defective pleading that could satisfy equitable tolling, American Pipe obviously being a class-action tolling rule. We read that cross-reference as a suggestion that under the right circumstances, if somebody reasonably relies on class-action tolling facts that ultimately prove to be ineffective, that that individual has the ability to ask the Court to find that equitable tolling should apply. If there is such a case, the facts of this case really should satisfy this test. The test is set forth in the Holland case. Due diligence and extraordinary circumstances are the two prongs that have to be satisfied. Both of them are well satisfied in this case. First, the Menominee Tribe relied on a preexisting class-action which dealt with almost identical substantive claims against the United States. Are you talking about the Rama? Yes, correct, Justice Ginsburg. And that was a decision, unpublished decision by a district court. It never went any further. Well, it is still a certified class, Justice Ginsburg, and the Menominee Tribe not only is a member of that class, but has to date received a portion of several settlements that were entered into in that class action, and in fact is poised to receive another large payment in a settlement that the class and the United States have asked the Court to approve. The issue that that case settled or addressed was whether exhaustion was required at all. Minimal research would have shown that every other court at that time who had addressed the issue had required exhaustion. Now, we'll go later to exhaustion when. That's a separate question. So how could you reasonably rely on a lower court decision that hasn't gone through the crucible of appellate review without having done any research on whether its premises were subject to dispute, reasonable dispute, and rely on that? Well, Justice Sotomayor, I have a couple of answers to your question. First of all, the United States did not challenge the certification of the class in the REMA case, not when it was originally certified based on the claims that were then in the case, miscalculation claims, nor later on when additional claims. Sotomayor, they raised the argument just last. They raised the argument that the exhaustion requirement didn't meet the commonality prong of class certification. So they did make an argument against it. Oh, they argued. But the district court judge in the REMA case reasonably, we think, concluded that because of the unique nature of the claims that the REMA class was seeking to pursue. I know that's what you believe, but every other court up until that time had said no. You needed to exhaust. Now, we can go to a separate question of exhaust when later, but how could you at that point rely on that case to think that you didn't have to? Well, the Menominee Tribe didn't rely just on that case. That case was an important factor that it relied on. But there was also other factors that it relied on. In the Cherokee Nation certification process, the United States did not raise presentment as a defense. Instead, it raised Rule 23 grounds as a basis not to certify the class. And the district court judge in that case, on garden variety Rule 23 grounds, ruled that that case could not be certified. Didn't say anything in his order about presentment, jurisdiction, did not talk about that whatsoever. And in fact, in his ruling, he specifically said that if a class had been certified, it would have been easy to identify all of the tribes in the country that would have been members because they were all listed on the shortfall reports that the United States produced at the same time as the years in which the claims were arose. Mr. Stromer, all of this goes to deciding whether the legal advice they received was reasonable legal advice. I find that quite irrelevant. Do you have a single case in which legal advice has qualified for equitable tolling? No, Your Honor. We can't cite a single case for that narrow principle. Scalia, you are really arguing a remarkable proposition that if you get bad legal advice, that justifies equitable tolling. You mentioned extraordinary circumstances, but our cases refer to extraordinary circumstances that stood in the way and prevented timely filing. I would not qualify erroneous legal advice as preventing timely filing. I don't care how reasonable it was. It didn't prevent it. Well, Your Honor, in the context of class action tolling, there is always a legal judgment call made about whether or not class action tolling applies. And if equitable tolling is not available as a fallback, if in fact that judgment was not made correctly and discovered many years later, then the whole premise of class action tolling, I think, is undercut, because any member of a class, for example, in the Cherokee Nation case where the district court judge said absolutely nothing about presentment, nothing about jurisdiction, the government didn't raise that defense, focused only on Rule 23 issues, in any case in which a district court judge declines to certify a class, if equitable tolling isn't available as a fallback, then the most prudent thing would be to limit our principle. Scalia Erroneous legal advice justifies erroneous equitable tolling only in class action cases? No. I would frame it slightly differently, Your Honor. I would say that when a party reasonably relies on class action tolling, that at a later date is found to be ineffective. But you're limiting it to class actions. You don't want to – why should it be limited to class actions? If Erroneous legal advice justifies equitable tolling, why should it be limited to class actions? Well, the Holland test still has to be satisfied, Your Honor. It has to show due diligence. It has to show extraordinary diligence. It has to show extraordinary diligence.  And that's a very extraordinary circumstance. So we're not eliminating those prongs at all. Right. But if legal advice prevents tiling, timely filing in class action situations, I don't know why bad legal advice doesn't prevent timely filing in every other situation as well. I just don't – it's sort of a weird, a weird rule just for class actions. Well, Justice Scalia, the circumstances in this case are extraordinary and are very rare. It is very unlikely that you will find another circumstance where a preexisting class action dealing with the same substantive matter against the same party of the United States in which a court specifically addressed the presentment issue and ruled in favor of certifying the class is what was repeated to the Court. So it's a very rare circumstance, and it's a very rare circumstance that the Court has to deal with class certification and the presentment. It was a long time, wasn't it? The total amount was 707 days, Your Honor. So why was that due diligence? I mean, I know that we're not arguing about due diligence, but it seems to me that when there was – certification was denied in the Cherokee case, you had 2 years to present and you would have been home free. You would not have encountered a time bar. Two years, but you in fact didn't present until 4 years after the denial in the Cherokee case. So how is that due diligence? Well, in the context of reliance on class action tolling applying, Your Honor, it is due diligence, and it's reasonable diligence. In a class action environment, a party is not encouraged to do anything, and a party is entitled automatically to do the action. But the class action is over. It's been denied. I'm sorry, Your Honor? The class action has been denied. Correct. So at that point, you know you're on your own. You can't piggyback on the class. You know you're on your own, and yet you let 2 years go by. I don't understand that. Well, Your Honor, under class action tolling rules, you're entitled to the entire period that the class action certification was pending. That's 760 days. You're automatically elected. Actually, that's not quite true. There's a circuit split which hasn't been addressed anywhere in the briefing. Some of the circuits do it the way you say. They stop the clock and restart the clock at the end of the tolled period. In those circuits, you would win. You could wait the entire 6 years plus, however long the other case was pending. But another series of circuits look to diligence throughout the period. And so you'd be asking us to make an assumption about which or make a decision about which tolling applies. You are taking a risk no matter what you did. All right. There's certainly in any class action environment a risk in relying on class action tolling, particularly as the facts of this case demonstrate, if ultimately reliance is found ineffective because of class action tolling. I'm sorry. Sotomayor, all of these decisions, were they made with the advice of a lawyer? I mean, I have a sense that the tribe was concerned about its resources and that they were just getting together and talking about this and deciding we're not going to win under the law, so we're not going to file. And it was only when Cherokee Nation was decided by this Court that they realized they had a viable claim. So, but answer my question. Was there legal advice sought? They relied on legal advice provided by class counsel who communicated with all putative class members and made it clear that the tolling period would apply during the pendency of the certification. And they also made the case that the tribe was concerned about its resources and that they were just getting together and deciding we're not going to win under the law. Well, we still think the backdrop against which the tribe was making the decision, which is as a member of a class that had been certified, where presentment had not been found to be an obstacle because of the unique nature of the claims at issue in the case, should be an important factor that this Court will factor into whether or not equitable tolling should apply. But had not been found by a single district court, right? I mean, you're saying that that single district court should have had such power in the tribe's mind that they didn't do the presentment. That seems an extraordinary thing. It's just a single district court. A single district court has no control and authority over anyone or anything other than that particular decision. That's true, Your Honor. And that particular decision had a direct impact on the Menominee Tribe because they were a member of the class. They benefited from that decision. They received payments out of settlements that the United States and class counsel had the court approve premised on the court having jurisdiction to be able to approve them. They will benefit shortly next spring from another proposed settlement where the class counsel as well as the United States have proposed that the claims that will be signed by parties will serve as the presentment to satisfy the jurisdictional requirement. So, yes, they did benefit, and that was not an unreasonable thing to do. Breyer. The point is there is one court that says your tribe can be a member. Your tribe didn't present its claim to the contracting officer. And so why can they be a member? The judge addresses that question, and he says normally they couldn't be a member. But they can here because this is the kind of case that is attacking general practices of the administration. Then, okay, fine. You got that. Then shortly after that, or maybe a few years after that, another case comes along. And the other case doesn't involve the situation of attacking the practices generally. It concerns the individual contracts between the tribe and the Indian Bureau, whatever, you know, in the government. And there they say you can't have a class action. So you'd think and this kind of case you want to bring now is the second kind, not the first kind. So you'd say, why is it fair to let you bring this case? After all, if you'd read the opinion closely in the first one, you wouldn't have thought you should have waited. If you had any doubts about it, the second one would have told you you should have waited. And even beyond that, the administrator signs a piece of paper where they ask him, do you have any claims under these contracts, and he says none. So it doesn't seem you're talking about pure equities. You have very strong grounds. Now, what's your reply to that? Well, I would not agree with one of your premises. You probably wouldn't agree with any of them. Not your conclusion or one of your premises. But the premise that I disagree with that I think is very important is that the Cherokee Nation complaint alleged the same kinds of system-wide short fundings by the United States that were contained in the REMA complaint. The REMA complaint initially, when it was certified, only included one category of claims called miscalculation claims. But later on, during the pendency of the Cherokee Nation case, additional claims were added, and by the time the Cherokee Nation certification decision was issued, the claims were for all intents and purposes the same, and they challenged a systemic underfunding and short funding by the United States that was based on, we know now from your Court's decision in the Cherokee case as well as the REMA case, on an incorrect reading of the law. And they implemented that system-wide, the policies that the Indian Health Service used to implement this short funding system were designed to short fund tribes because they were designed based off of the assumption that they were not statutorily entitled to 100 percent funding. So the nature of the claims in the Cherokee case, in my view, Your Honor, were the same as both were included in the REMA complaint initially, and then as the complaint was amended over the course of the years, by the time the Cherokee Nation certification decision was issued. Breyer, you're not making that kind of claim here, are you? I mean, you're not challenging the general practices of the government. Rather, you're challenging the particular contracts and whether you've got enough money under them.  That's correct, Your Honor. We're going to do that. If that's correct, well, then the fact that the second case emphasized the general, you know, the general attack, which lacks in your case, is more reason for thinking that we better file our claims quickly, because what they held in those two cases are not going to help us, who have an individual claim. We better do what the statute says or the rules, and we better file our presentment to the contracting officer, and certainly not write the words none when they ask you if you have any claim. Am I right? I would disagree with part of what you're suggesting, Your Honor, which is that the tribe only had one option, which was to file, essentially, after the Cherokee Nation's certification decision was issued. In fact, there was nothing in that decision that talked about presentment and jurisdiction. The Court ruled on garden variety rule 23 reasons. And ordinarily, those reasons are not a basis for class action tolling not to apply. In fact, Crown Cork is almost identical. The same kinds of garden variety rule 23 reasons were found in that case to bar the certification of a class. But class action tolling, in fact, applied in that case. So when you focus just on the Cherokee Nation decision itself, I think there's every reasonable reason to be able to rely on class action tolling. Now the way I just want to clarify one point on this issue of that you were a member of the class. You relied just on counsel's letter in the first case in Raman, the letter where counsel described the class and said there would be no. In Cherokee Nation? No, in the prior case. No, in the Raman case, the tribe is a member of the class. It's received several settlement payments. Sotomayor, you said that the lawyers had told you that there would be class action tolling. That was the general letter they sent to everyone. That's in the Cherokee Nation case, Your Honor. Yes. And they said that when they filed the complaint. The complaint clearly included the tribe. It identified all tribes that had Self-Determination Act contracts with the Indian Health Service. The tribe clearly fell within that definition. And when the Court ultimately ruled and chose not to certify the case, the Court said, I could have identified who would have been part of this case because the government's own shortfalls identify each tribe by name and how much we actually shortfall or short-funded them in the given years. But you haven't answered my question. That's the only advice from a lawyer you received. Yes, Your Honor. That's correct. That's the only advice in the record. I'd like to reserve the balance of my time. Thank you, counsel. Ms. Einstein. Mr. Chief Justice, and may it please the Court. Just as Sotomayor, you stated the tribe determined that it was not going to win on the final ball, and so it decided not to file. Indeed, the tribe made a strategic calculation here to allow the 6-year CDA statute of limitations to pass because it wanted to monitor the litigation by other tribes rather than file and pursue its own action. The miscalculation that it made about whether the clear deadline could be extended by class-action tolling, that was a routine litigation mistake, the kind that is far from the sort of extraordinary circumstance that could warrant equitable relief. Nor did that miscalculation prevent the tribe from filing earlier. To the extent that there was uncertainty as to whether it was a member of the Cherokee Nation class and whether presentment was a jurisdictional bar to that class membership, the prudent course in any reasonably diligent litigant would have filed under the clear deadline rather than wait for the uncertain application of tolling and the potential forfeiture of its claims. Sotomayor, how did it know that in Cherokee Nation? He claims that the only decision was on under Rule 23 and that presentment and tolling was not at issue there. Your Honor, the tribe confuses the definition of the class and the class certification decision with its own jurisdiction, whether the court's own jurisdiction over its claim. So the tribe itself was jurisdictionally barred from the class membership, regardless of how the class was defined. There was no need necessarily for the class to be carve out those over whom the district court lacks jurisdiction. The fact that the court lacked jurisdiction flows from the fact that the tribe failed to meet the mandatory presentment requirement. Sotomayor, let's talk about the American cut tolling. It would seem to me, as has happened in a number of litigations, that at the time that the complaint is filed, it doesn't mean that every member of the class has to have exhausted, because if that's what it means, then there can never be a class action. I agree, Your Honor, that they can present to the district court. So that issue is still open under the law, because it would seem to me, and I could be wrong, that if you still have time on the clock when the complaint is filed, that you can, before you receive any remedy under the class action suit, you can present exhaust then and recover, if you've done it during the period that the 6-year period plus tolling. That's what some courts have done. They've defined the class as people who have exhausted or who still have time to exhaust. That's correct, Your Honor, but if the tribe exhausted while it still had time during the pendency of the Cherokee nation class action, we wouldn't be sitting here today. Secondly, if it exhausted — because let me just be clear that one of the problems with the class action, or a fundamental problem with the class action tolling argument, is the tribe is trying to toll the wrong deadline. Class action tolling doesn't apply to the time to file administrative prerequisites to suit. It applies to the time for filing a lawsuit in Federal court. And there's a good reason for that, and that's because the policy of class action tolling is to relieve litigants of the difficult choice of whether to file an individual lawsuit or to wait and participate in the class and risk forfeiting their right to the lawsuit. But that doesn't apply to an administrative prerequisite that must be completed either way. Whether the tribe proceeded individually or as a class, the first step and mandatory step it had to take was to present its claim, and it failed to do that within the requisite timeframe. Sotomayor, this is a slightly different argument. You're saying they can't get equitably tolled for exhaustion of the administrative process. Your Honor, I'm saying that's not true. They can't get equitably tolled for filing a lawsuit. Yes, Your Honor, they can't get class action tolling for the time, the administrative period, because that's not what American Pipe refers to. It refers to the time for filing a lawsuit. And in any event, the class action rule under American Pipe, American Pipe made clear that it only applies to asserted class members who would have been parties to the suit had it been permitted to continue as a class action. And the tribe fails there, too, because it was jurisdictionally barred at the time the class decision was pending from participating in the suit. So even if Cherokee Nation had been certified during the pendency of the class certification determination, the tribe was barred. But importantly, the Cherokee Nation class was not granted. It was denied. And it was denied, as Justice Ginsburg pointed out, two years before the CDA deadline would expire for the first claim. And the tribe waited more than four years after class denial to present its claim. There was no basis for waiting. At that point, the tribe knew it must pursue an individual action. And the only reason it waited was to hope that this Court would more conclusively reject, and did eventually conclusively reject, the government's affirmative defense that it was asserting in that case. But the idea that a tribe or any litigant who could have acted earlier chooses to delay for strategic reasons and then could get tolling when it finds out that it miscalculated the deadline would be unprecedented. And in fact, the fact that equitable tolling is foreclosed follows directly from this Court's cases. It's simply a common litigation problem that this Court has addressed time and again, where a litigant believes the deadline is longer than it is, believes their claim accrued later than it did, believes that tolling applies, and in fact it didn't. That was the case in Lawrence. That was the case in Pace. That was the case in Irwin. And in each of those cases the Court found equitable tolling did not apply. Ginsburg. Ginsburg. Ginsburg. Ginsburg. Can you explain something in your brief that would seem to make all of this besides a point? You several times referred to a release form that covered the years in question. And it's in the appendix at pages 240 to 242. If the — if there was a release covering those years, why does anything else matter? Why isn't the release — they released the claims for those three years? Well, Your Honor, certainly on the merits we agree with you that the release would foreclose the right of the tribe to collect on these particular years. But we're at the preliminary stage, which is to say whether we even get to the merits of the claim, and certainly we think it does have relevance to the equitable tolling inquiry and whether the timeliness inquiry, which is, first of all, it goes to the diligence. This isn't just a litigant who took no action. It took one affirmative step, and the one affirmative step it took was to release the claims at issue. That's it. Alitoson Did the Indian Health Service have the authority to require the tribe to release those claims during the contract closeout process? Ginsburg. Your Honor, there's no specific statutory authority. The tribe argues in its reply brief that the health service was somehow barred from seeking a release, but I don't believe that there was any — certainly in the government's view there was no statutory prohibition on the type of release that was issued here, which basically allows for exception, provides a place in the release for exceptions of claim, and the tribe list agreed to none. So the tribe list agreed to none. So the tribe list agreed to none. So the tribe list agreed to none. Alitoson What would have happened if they refused to sign the release? Ginsburg. Well, the declaration of the contracting officer that's in the record speaks to that point, which said that there would be no adverse consequences to a tribe that refused to sign the release or that signed the release with exceptions. It was an administrative process for the agency to be able to close out the contract after a requisite contracting period. But it's certainly significant as to what the tribe was thinking in its diligence as to the pursuit of its claims, which is the concern of equitable tolling. Roberts So it turned out there were consequences after all. Ginsburg. Well, there weren't consequences in terms of its ability to contract with IHS or the terms on which it could contract with IHS going forward. I think that there are consequences in equity when a party releases a claim affirmatively, whether or not that was something that was required of it. It voluntarily signed that release. But ultimately, even without the release, the tribe took no action to pursue its claim during the statutory period. And counsel for the tribe suggests that we should equate the rules for class-action tolling and equitable tolling. But equity operates under different rules, and the diligence requirement is paramount among them. Equitable tolling requires the party to demonstrate diligence throughout the entire period it seeks tolled, and it requires that the impediment to suit actually prevent the timely filing. Neither of those standards are met. Alito Are there any circumstances in which reliance on legal advice could constitute the extraordinary circumstance required for equitable tolling? Ginsburg Your Honor, I think it's a — this Court has never recognized as such. In Holland, it was a very unusual circumstance where it was mistakes by counsel, but mistakes that really amounted to an abandonment by counsel. It was certainly not advice of counsel.  Sotomayor That it's settled in all 13 circuits. They've all ruled one way. You don't think it's reasonable to give advice based on that ruling, that that might be an exceptional circumstance? Ginsburg Well, Your Honor, I think in that — in your hypothetical, it would be the other way per se, especially if counsel's advice was poorly rendered. But in the case, if you're asking, if there was a situation where binding precedent afforded more time to a litigant, but yet later it was determined that less time was available, that may be — may be a circumstance that could qualify for tolling, but only where other factors are met. And, for example, in — Sotomayor So how about it's not 13? It's 12? But you're in a circuit that hasn't ruled. You mean that it's — it wouldn't be an extraordinary circumstance in that situation? Ginsburg Well, Your Honor, that was the case in Pace, for example, where the litigant in that case claimed that he was relying on then-binding and existing Third Circuit precedent and believing that his time for filing a Federal habeas action was tolled. Sotomayor That's one circuit. I'm talking about the vast majority, 12 out of 13. And even in those cases, like in Duncan, this Court overturned a large number of circuits in terms of the tolling standard. And the lower courts did examine whether that could be an extraordinary circumstance, but it wasn't enough to necessarily get tolling where the litigant failed to otherwise exercise diligence in the pursuit of the original claim, and here that would be the — Sotomayor Fair, fair answer. Ginsburg Yes, exactly. As this Court has — and the questions have already suggested, the tribe's reliance on class-action tolling in this case was not reasonable. But even if it had some belief that the deadline for filing its administrative claim could be extended, it was incumbent upon it under the diligence standard for Holland, the diligence prong of Holland, to file within the clear deadline. After 2001, the tribe knew that it had to proceed individually. And the reason it waited, in the words of the Wauquah Declaration, was that it wanted certainty over its — over the substantive claim. And what it amounts to, what this case essentially amounts to, is a tribe's determination that it was not worth the effort to pursue a claim until after this Court's decision in Cherokee Nation. Alito Was the government harmed in any way by the lack of presentment? Ginsburg Well, Your Honor, in some respects it remains to be seen, but I believe that prejudice may result from the failure to present in a timely fashion. First of all, putting aside the notice requirement, this is a very records-intensive inquiry. In Petitioner's brief, they suggest that this was just a matter of records that are already stored in the government's possession. But many of the inquiry of what actually the contract support costs would be required is a detailed and complex determination. And, in fact, the experience in REMA highlights this, where the settlement negotiations have gone on for three years trying to determine what the actual damages are through good-faith negotiations. So, yes, I would believe that the government may suffer prejudice as a result of now, nearly 20 years later, having to determine actual contract support costs if this were to go back on the merits. Ginsburg The D.C. Circuit said this is presentment, this is just paperwork, easy to do. But the tribe couldn't, if they had presented to the contracting officer, they just couldn't leave it at that. They would have to take an administrative appeal within 90 days, or they'd have to appeal to the Federal Circuit within a year. So more was at stake for this tribe than simply filing a piece of paper. O'Connell Your Honor, there's no doubt that perhaps the D.C. Circuit's envelope in a stamp may have been a bit of hyperbole. But that said, the tribe's argument that it was the subsequent deadlines that would have led it to delay is really an astounding proposition, which is that their basis for tolling is the existence of statutes of limitation. And that really can't be the case, that the fact that once they file their claim, it may then follow that additional limitations periods may kick in, that that could warrant delay in and of itself. But even putting that aside, there were other options that the tribe could have pursued. For example, having presented its claim, and if it did so prior to, it said it hoped to be a part of the Cherokee Nation class action, if it did so prior to the Cherokee Nation class action, and the Cherokee Nation class action was, in fact, certified, then it may have an argument it's part of that class. To the extent to which the Cherokee Nation class was denied, then the only the only the presentment requirement was the necessary step to moving forward to presenting its claim individually at the contract, Board of Contract Appeals level or at the judicial level. So I don't believe that the inevitability of further litigation in any way is a basis for tolling in this case. If there are no further questions. Roberts. Thank you, counsel. You have nine minutes remaining, Mr. Stromer. Thank you, Your Honor. I'll start with a few comments on the last point that counsel made. The stamp in an envelope quote is more than hyperbole. It's just flat wrong. There's cost incurred by the tribe to calculate the amount of claims. There's cost in pulling together the letter that then goes into the envelope that is the claim itself. But more than that, and your question alluded to this, Justice Ginsburg, the once the claim is filed and the government undoubtedly, as it did during this period of time with all of the claims that were filed, they would have denied the claim. That triggers another statute of limitations, either 90 days to appeal in the Civilian Board of Contract Appeals or one year to appeal in Federal district court. And that deadline had been found by courts to be jurisdictional. So, in fact, what we're talking about here is a conundrum, because the 6-year statute of limitations of the Contract Disputes Act had not been found to be jurisdictional. It was later on found to be jurisdictional as a result of the presentment requirement. But the second statute of limitations that would have been triggered would, in fact, have been jurisdictional, and the tribe would have had no option but to litigate. And if we place these facts on top of what happened in Cherokee Nation, it perfectly illustrates the conundrum. 707 days it took for the certification process in that case. If the tribe had filed at the beginning of that process and received a rejection of its claim during the first 100, 150 days, let's give the government, you know, ample time to respond, then it would have triggered a statute of limitations that was jurisdictional, that the tribe would have had to have acted on in order to make sure that its claim was, in fact, going to still be alive. And that would have happened before the end of the 707 days. So it's more than a stamp in an envelope. It really is a jurisdictional conundrum that the tribe was aware of and concerned about that partially factored into the tribe's decision not to file claims. Sotomayor, there are so many people who don't have resources to pursue a litigation. How do we differentiate you from those millions of people with lack of resources who choose not to pursue claims either because they think at least up until then they're going to lose, because that's the state of the law, or for whatever other reason they're waiting? How do we articulate an equitable tolling principle that won't open a floodgate to making a statute of limitations basically a nullity? Well, the primary basis, Your Honor, for the tribe's position that equitable tolling should apply is its reasonable reliance on class-action tolling. The other factors, such as the cost of litigation, such as the United States' fiduciary responsibility and trust responsibility towards the tribe. If it was reasonable, why didn't you litigate that? There was no question. Why didn't you take the order of the court below and appeal that order? Well, there were two cases. Both the Federal Circuit and the D.C. Circuit ruled just about the same time on that that class-action tolling was not available because of the presentment requirement. Do you seek cert on that question? The Arctic Slope, the other case, did. So there was no split in the circuits, and the Arctic Slope case did, in fact, petition this Court, and this Court didn't take the case. So the Menominee Tribe chose not to throw bad money after a bad result, which was guaranteed, by preparing a petition cert, which this Court had already denied in the Arctic Slope native case. When there was no split, but you had a split. There was no split. No, Your Honor. When your decision came up. No. Our decision on that issue, there were two rounds of litigation at the court of appeals level. In the first round, both the Federal Circuit and the D.C. Circuit held that class-action tolling was not available, and they both remanded back to the trial courts to determine whether or not equitable tolling applied. And that first decision was appealed by Arctic Slope native associate, or petitioned this Court to take that case, and it was not taken. And Menominee did not take those steps by filing a petition. I also want to address the prejudice issue. There is — if there is anything in the government's briefs that strikes me as hyper bullets, that they were prejudiced. They have been settling hundreds of these claims around the country. These claims are very straightforward. The contract, the methodology that's used to calculate the entitlement for contract support costs are well established in policy. We know the government produced shortfall reports contemporaneous with the years in which these claims accrued in which they told Congress for each tribe how much they short-funded them. So that the government would tell you that they are prejudiced because they would have to go back and look at the contract and look at the policy in place at the time to calculate the amount due is just not, just not credible in my view. I rest our case, Your Honor. Roberts.